CHEVRON U.S.A., INC., Appellant,

v.

VORTT EXPLORATION COMPANY, INC., Appellee.

No. 2–87–042–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 30, 1988.

Publication Ordered April 18, 1990.

Harris E. Kerr, Midland, for appellant.

Gault & Gault, and Duncan Gault, Mineral Wells, for appellee.

Before KELTNER, HILL and FARRIS, JJ.

OPINION

KELTNER, Justice.

The issue in this appeal is whether Chevron U.S.A., Inc. (Chevron), is liable in quantum meruit to Vortt Exploration Co., Inc. (Vortt), for seismic data provided by Vortt to Chevron during negotiations over the joint development of a tract of oil and gas leases.

The case was tried to the trial court which issued findings of fact and conclusions of law. The trial court found that Chevron was liable for quantum meruit and

entered a judgment against Chevron for $178,750.

We hold the trial court erred in granting judgment for Vortt on the theory of quantum meruit without a fact finding that the services and assistance in question were furnished under such circumstances as would reasonably notify Chevron that Vortt expected to be paid for the services and assistance provided. Additionally, we hold this element was not proved as a matter of law. As a result, we reverse the judgment of the trial court and render a take-nothing judgment in favor of Chevron on the quantum meruit claim.

The subject of this lawsuit is the mineral rights to a 160–acre tract of land in Young County, Texas. In 1976, Chevron became interested in the tract and began purchasing leases in the area. Vortt became interested in the same tract two years later and also began purchasing leases.

In December 1978, Vortt contacted Chevron by letter, claiming that it held 85% of the mineral leases under the tract, Chevron held 15%, and suggested that Chevron "farm out" its interest to Vortt for the purpose of drilling a well. Chevron declined the offer.

Soon thereafter, Vortt proposed that the two companies join in drilling a test well on the site. In response, Chevron requested that Vortt submit a proposal.

In March 1979, Vortt did submit a proposal. At that time, Vortt revised its ownership claims, stating that Chevron and Vortt owned approximately the same percentage of the minerals. Vortt proposed a joint effort to produce the lease. In response, Chevron agreed to the joint purchase of an abstract and title opinion. Chevron further proposed that the cost of the abstract and title opinion be borne by the parties in percentage equal to the ownership interest reflected in the title opinion. Vortt replied that it had a fairly current abstract that only needed supplemental work. Vortt also forwarded a schedule showing that it held leases on 93% of the tract.

Chevron countered that it believed it held leases on approximately 63% of the tract,

Vortt held approximately 35%, and 1½% was unleased. Once again, Chevron offered to participate on the basis of ownership reflected in a title opinion, provided that the parties could arrive at a mutually acceptable operating agreement. Eventually Chevron had an abstract and title opinion prepared using the abstract that Vortt had previously commissioned.

The parties negotiated back and forth concerning this venture until 1983. During this time period both parties claimed varying percentages of ownership, and both Chevron and Vortt proposed operating agreements.

The major roadblock to the negotiations was a lease Vortt obtained from Doyle and Wayne Callahan (Callahan lease). Vortt claimed that the Callahan heirs owned 100% of the minerals on the tract, and offered to contribute this lease to the joint effort if Vortt would be named as operator with a 51% interest in the entire tract. Chevron doubted the validity of the lease from the Callahan heirs, as well as other leases purportedly held by Vortt. Accordingly, Chevron demanded that any operating agreement stipulate that each party bear the risk of failure of title of any of its leases. This proposal was unacceptable to Vortt and no operating agreement was made by the parties.

In November 1983, Chevron commenced drilling on the tract, which resulted in a producing well. Chevron then brought suit against Vortt seeking a declaratory judgment that the Callahan lease, and Vortt's other leases were invalid. Vortt counterclaimed, asserting the validity of the Callahan leases; seeking to impose a constructive trust upon Chevron's leases, if the Callahan lease was deemed invalid; or alternatively, seeking recovery under the theory of quantum meruit for seismic services, graphics and maps given by Vortt to Chevron during the negotiations.

In connection with the quantum meruit claim, Vortt claimed that it provided seismic services, graphics, and maps to Chevron during its negotiations for a joint operating agreement. Vortt contended that

Chevron utilized the information in drilling the producing well.

Vortt insisted that it never would have provided the information to Chevron but for its expectations that Chevron would enter into an operating agreement. On the other hand, Chevron contended that the information provided was part of the "horse trading" involved in negotiations. Chevron also argued that it was never on notice that Vortt expected payment for the services and assistance provided.

After a trial to the court, the judge held that: Chevron was the owner of all minerals under the tract; all of the leases held by Vortt were invalid; no constructive trust existed; and Vortt would recover $178,750 on its quantum meruit counterclaim. Findings of fact and conclusions of law were filed by the court. This appeal is limited to the court's award of damages for quantum meruit. *See* TEX.R.APP.P. 40(a)(4).

A recovery of quantum meruit is based on equity. *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex.1988). The elements of a quantum meruit claim are: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing or providing such services or goods was expecting to be paid by the person sought to be charged. *Bashara v. Baptist Memorial Hospital System*, 685 S.W.2d 307, 310 (Tex.1985).

In its twelfth point of error, Chevron contends the trial court erred in granting judgment against Chevron on the theory of quantum meruit without a fact finding that the services or materials furnished were furnished under such circumstances that would reasonably notify Chevron that Vortt expected to be paid.

The trial court entered extensive findings of fact and conclusions of law. However, the court did not enter a finding of fact that the service and assistance were rendered by Vortt under such circumstances

as reasonably notified Chevron that Vortt expected to be paid for the seismic information, graphs and maps. This was a crucial element of Vortt's quantum meruit claim against Chevron.

Vortt argues that it obtained findings of fact that support the recovery in quantum meruit. Specifically, Vortt argues that four findings of fact supply the missing element. Those are:

9. Vortt provided the aforesaid services and assistance to Chevron in the belief that Chevron and Vortt would jointly develop the subject 160 acres for the production of oil and gas, and but for such belief would not have provided such services and assistance to Chevron, which were undertaken for both Chevron and Vortt.

. . . .

13. Chevron was reasonably notified that Vortt, in performing such services and assistance for Chevron, expected to join with Chevron in a mutually satisfactory agreement for their joint production of oil and gas from the subject 160 acres.

14. Chevron did not plead the services and assistance provided by Vortt were gratuitous.

15. Chevron did not offer any proof that services and assistance provided by Vortt to Chevron were to be gratuitous.

These findings of fact do not rise to a level that will support the judgment for quantum meruit. At the outset, findings of fact 14 and 15 misstate Vortt's burden of proof to obtain affirmative findings on all elements of quantum meruit. Additionally, findings of fact 9 and 13 merely establish Chevron was on notice that Vortt, in performing the services and assistance, expected to join with Chevron in a mutually satisfactory agreement for production of the well and would not have provided such services and assistance except for such belief. Findings 9 and 13 do not constitute a finding that Vortt supplied the services and assistance under circumstances that notified Chevron that Vortt expected to be paid if a mutually satisfactory agreement was not forthcoming. As such, these findings

 

do not support a finding that such services and assistance were rendered, "under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *See Bashara*, 685 S.W.2d at 310.

An omitted, unrequested finding can be supplied by presumption in support of the judgment if there is evidence to support the finding. TEX.R.CIV.P. 299. However, there is no evidence that Chevron was notified that Vortt, in performing such services and assistance, expected a quid pro quo of joining in a mutually satisfactory agreement for joint production of oil and gas on the tract.

The record is clear that Vortt hoped to forge an agreement with Chevron to jointly develop the oil and gas tract. However, the evidence also indicates an agreement was not reached because the amount of Vortt's mineral interest was uncertain. At various times, Vortt claimed to own 93%, 85%, 50%, and 35% of the mineral leases. Vortt steadfastly refused to sign a joint operating agreement which provided that each party bore the risk of failure of title of any of its leases. Instead, Vortt insisted that a certain percentage of interest be assigned absolutely to each party in the operating agreement. The negotiations were heated; but neither side compromised on the structure of the agreement. When the proposed operating agreement could not be reached on mutually agreeable terms, Vortt's hopes of sharing in the production ceased except for royalties on the mineral interest it owned.

The trial court found that at the time of trial, Chevron owned all of the mineral interests in the disputed tract. At one time Vortt did own 35% of the mineral interest, and its lease was forfeited for failure to pay shut-in royalties.

Both parties admit that no deal was struck, because neither side would accede to the demands of the other. There is no evidence that Vortt provided the seismic information, graphs and maps under circumstances that reasonably notified Chevron that Vortt expected payment if a mutually satisfactory operating agreement was not reached. Therefore, the omitted finding of fact cannot be presumed in support of the judgment and the judgment for quantum meruit cannot be upheld.

We reverse that part of the trial court's judgment awarding Vortt $178,750 and render a take-nothing judgment for Chevron, assessing all costs to Vortt.