**DALLAS COUNTY CHILD WELFARE UNIT OF THE TEXAS DEPARTMENT OF HUMAN SERVICES, Appellant,**

v.

**Teresa BLACK, Appellee.**

**No. 05–90–01022–CV.**

Court of Appeals of Texas, Dallas.

June 21, 1991.

Rehearing Overruled Aug. 6, 1991.

Carey E. Smith, Dallas and Sue Berkel, Austin, for appellant.

Allen R. Morris and Lawrence J. Praeger, Dallas, for appellee.

Before STEWART, THOMAS and MALONEY, JJ.

## OPINION

THOMAS, Justice.

In this appeal arising out of a suit affecting the parent-child relationship (SAPCR), the dispositive issue is whether Teresa Black (Mother) is entitled to recover her attorney's fees and expenses under chapter 105 of the Texas Civil Practice and Remedies Code against the Dallas County Child Welfare Unit of the Texas Department of Human Services (the Department). For the reasons stated herein, we conclude that the trial court erred in awarding judgment in favor of Mother. Accordingly, we sustain the first point of error, reverse the trial court's judgment, and render judgment that Mother take nothing.

## FACTUAL AND PROCEDURAL BACKGROUND

A.B., the four-year-old child involved in this case, attended a school for handicapped children.[1] On Thursday, May 5, 1988, as the teachers were cleaning A.B. after she wet her pants, they noticed that the child's labia was red and slightly swollen. Suspecting child abuse, the teachers contacted the Department, which sent caseworker Barbara Anderson to talk to A.B. and the teachers. A.B. told Anderson that her "Daddy," whom she identified as Klay Rogers,[2] had touched her "bone" (the child's word for genitals) and had put two fingers inside of her. According to A.B., he had done this at least once in Mother's presence. Anderson took the child to be examined by Dr. Paul Prescott, a pediatrician with experience treating child-abuse victims. Dr. Prescott examined A.B. and determined that, except for some redness around the labia, the external appearance of the child's genitals was unremarkable. On closer examination, however, Dr. Prescott discovered a small abrasion inside the labia that A.B., due to her cerebral palsy, could not have inflicted upon herself.

Anderson then took the child back to her office where she called Mother and asked her to come to the office and to bring B.B., the child's younger brother. When B.B. arrived, Anderson interviewed him privately, and he told her that Rogers had touched his (B.B.'s) penis, that he had then touched Rogers' penis, and that Rogers was partially erect at the time. Anderson confronted Mother and Rogers with the children's statements, but their only explanation was that the children's babysitter must have molested them. Based upon this information, the Department took possession of the children pursuant to chapter 17 of the Tex-

---

1. A.B. suffers from cerebral palsy.

2. Rogers was Mother's live-in boyfriend.

as Family Code. *See* TEX.FAM.CODE ANN. § 17.03(a) (Vernon 1986).

The next day, the Department filed a petition for emergency care and temporary managing conservatorship. An *ex parte* order requesting temporary possession was presented to a district judge. The judge, however, refused to sign the order but scheduled a hearing on the matter before the family court master on the following Monday. Mother appeared, *pro se*, before the master on Monday. Although there was no evidentiary hearing on this day, a "master's recommendation" was signed, which indicated that: "ex parte orders approved. Emergency orders continued,"[3] and the matter was reset until Friday, May 13.[4] Based upon the master's recommendation, the district judge signed an order on May 9, which declared that there was "a continuing danger to the physical health and/or safety"[5] of the children and which further gave the Department temporary custody of the children.

An evidentiary hearing was finally held on May 18 before the master. After the Department presented its evidence, the master granted a directed verdict in favor of Mother. As a result of the master's ruling, the Department was directed to immediately return the children to Mother. Although Mother attempted to get her children that evening, she was unable to do so. At approximately 8:00 a.m. the next day, Mother began trying again to obtain possession of her children in accordance with the master's ruling. Meanwhile, the Department filed an appeal[6] with the district court requesting a trial de novo and also requested a stay of the master's order. The district judge refused to stay the or-

der, and Mother obtained possession of her children during the afternoon of May 19.

On June 6, Mother filed a counterclaim, which alleged "that the actions taken and the filing of the lawsuit by [the Department] were frivolous, unreasonable and/or without foundation," and further demanded fees and expenses as allowed by chapter 105 of the Texas Civil Practice and Remedies Code. On August 12, the Department nonsuited its SAPCR action.

The issue of the Department's liability under chapter 105 was determined in a nonjury trial. The trial court found that the Department did not act frivolously, unreasonably, or without foundation when it took possession of the children on May 5 and filed the lawsuit on May 6. The trial court, however, did find that from May 6, 1988, when the *ex parte* order was refused until the children were returned on May 19, the Department acted "frivolously, unreasonably and without foundation."[7] Therefore, the trial court determined that the Department was liable for Mother's costs, expenses, and attorney's fees under chapter 105 of the Texas Civil Practice and Remedies Code. The amount of attorneys' fees and expenses was determined in a jury trial. Following the jury verdict, the trial court entered judgment in favor of Mother in the amount of $53,426.15.

## LIABILITY OF THE DEPARTMENT UNDER CHAPTER 105 OF TEXAS CIVIL PRACTICE AND REMEDIES CODE

■ In the first point, the Department contends that the trial court erred in finding it liable under chapter 105 of the Civil Practice and Remedies Code because the

---

3. The master was not informed that the district judge had previously refused to sign the emergency orders, and apparently this fact was not reflected in the trial court's file.

4. By agreement of all parties, including Mother's attorney, the emergency orders were continued until Wednesday, May 18, in order to allow Mother's counsel adequate time to prepare for the hearing.

5. We note that, contrary to the recitations in the order, there had not been a finding by a judge

or a master that there was an emergency which necessitated removing the children from the home.

6. The appeal was ultimately dismissed because it was not set for hearing within thirty days of the order.

7. The trial court's finding on this issue sets forth ten specific reasons in support of this determination.

trial court's finding that it acted frivolously, unreasonably, and without foundation in specific conduct is not actionable under chapter 105. Section 105.002 provides:

> A party to a civil suit in a court of this state brought by or against a state agency in which the agency asserts a *cause of action* against the party, either originally or as a counterclaim or cross claim, is entitled to recover, in addition to all other costs allowed by law or rule, fees, expenses, and reasonable attorney's fees incurred by the party in defending *the agency's action* if:
>
> > (1) the court finds that the *action* is frivolous, unreasonable, or without foundation; and
> >
> > (2) the *action* is dismissed or judgment is awarded to the party.

TEX.CIV.PRAC. & REM.CODE ANN. § 105.002 (Vernon 1986) (emphasis added). It is undisputed that the Department is a state agency created by statute. *See* TEX.HUM. RES.CODE ANN. §§ 21.001–.013 (Vernon 1980). Further, the Department is defined as a state agency in section 105.001(3) of the Texas Civil Practice and Remedies Code. From the language of chapter 105, it is clear that this provision is a statutory waiver of sovereign immunity and a statutory remedy for costs, expenses, and attorney's fees. Waivers of sovereign immunity are to be strictly construed. *Lelsz v. Kavanagh,* 807 F.2d 1243, 1253 (5th Cir.), *cert. dism'd,* 483 U.S. 1057, 108 S.Ct. 44, 97 L.Ed.2d 821 (1987); *Paris Milling Co. v. Bullock,* 583 S.W.2d 487, 489 (Tex.Civ. App.—Waco 1979, no writ).

The crux of this dispute is the interpretation of section 105.002 and the meaning to be given the word "action." The Department contends that "action" and the "agency's action" all refer to a "cause of action," *i.e.,* "action" should be interpreted to mean only a "lawsuit." Thus, the Department argues that section 105.002 provides relief only when defending against a frivolous cause of action and does not apply to "frivolous conduct." Mother, however, maintains that "action" and "the agency's action" include not only the cause of action, but also any conduct by the agency that is frivolous, unreasonable, or without foundation, including the specific conduct listed by the trial court in its findings of fact.

In interpreting the meaning of this statute, we look first to the Code Construction Act for guidance. TEX.GOV'T CODE ANN. § 311.001–.032 (Vernon 1988 & Supp.1991); *see* TEX.CIV.PRAC. & REM.CODE ANN. § 1.001 (Vernon 1986) (Code Construction Act applicable to Texas Civil Practice & Remedies Code). The Code Construction Act provides that words are to be read in context and construed according to the rules of grammar and common usage, and words with a technical meaning are to be construed according to that meaning. TEX. GOV'T CODE ANN. § 311.011 (Vernon 1988). In its common usage, "action" can be interpreted to mean "conduct," 1 OXFORD ENGLISH DICTIONARY 127 (2d ed. 1989), but it also has the technical meaning of "lawsuit." *See Bradley v. Etessam,* 703 S.W.2d 237, 241 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); 1 OXFORD ENGLISH DICTIONARY 128 (2d ed. 1989).

We also consider the legislative history of the statute in determining the correct construction. TEX.GOV'T CODE ANN. § 311.023(3) (Vernon 1988). Chapter 105 of the Civil Practices and Remedies Code was originally article 2226b of the Revised Civil Statutes enacted in 1981, which provided:

> Sec. 2. In a *suit* in a court of this state *that originates with an action by a state agency* against a defendant who is an individual, the defendant, at any time after the filing of pleadings, may file a motion with the court stating that the agency's *suit* is frivolous, unreasonable, or without foundation.
>
> \*     \*     \*     \*     \*     \*
>
> Sec. 4. In a civil action in which an individual is sued by a state agency, on the dismissal of the *suit* or the award of judgment to the defendant, the court, on motion of the defendant and on a finding by the court that the agency's *suit* was frivolous, unreasonable, or without foundation, shall order the agency that brought the *suit* to pay ... the defendant's expenses ... and reasonable attor-

ney's fees, in an amount determined by the court.

Act of June 16, 1981, 67th Leg., R.S., ch. 727, §§ 2 & 4, 1981 Tex.Gen.Laws 2675, 2676 (emphasis added). As originally enacted, then, the statute targeted frivolous lawsuits rather than frivolous conduct. The Legislature amended the statute in 1983 to read:

> Section 2. MOTION OF FRIVOLOUS CLAIM. In a civil suit in a court of this state brought by or against a state agency in which the agency asserts a *cause of action* against a party, *either originally or as a counterclaim or cross-claim*, the party, at any time after the filing of the pleadings in which the *cause of action* is alleged, may file a motion with the court stating that the agency's *claim* is frivolous, unreasonable, or without foundation.

> \*　　\*　　\*　　\*　　\*　　\*

> Section 4. AWARD OF COSTS. In a civil action brought by or against a state agency in which the agency asserts a *cause of action* against a party, *either originally or as a counterclaim or cross-claim*, on the *dismissal of that action* or the award of judgment to the party, the court, on motion of that party and on a finding by the court that the agency's *action* was frivolous, unreasonable, or without foundation, shall order the agency that *brought the action* to pay, in addition to all other costs allowed by law or by rule, the party's fees, expenses, and reasonable attorney's fees, in an amount determined by the court.

Act of June 1983, 68th Leg., R.S., ch. 620, § 1, 1983 Tex.Gen.Laws 3884, 3885–86 (emphasis added). This amendment permitted parties having to defend a frivolous counterclaim or cross-claim brought by an agency to recover costs, expenses, and attorney's fees even if the agency did not bring the original lawsuit. Clearly, in two of the

three instances where "action" is used, the Legislature was referring to lawsuits, claims, or causes of action as demonstrated by:

> *dismissal of that action:* conduct is not "dismissed," but lawsuits, claims, and causes of action are "dismissed;"

> *brought the action:* conduct is not "brought," whereas lawsuits, claims, or causes of action are "brought."

This leaves only the instance where "action" is used referring to a finding by the court that the agency's "action" was frivolous, etc. Given the clear indication that "action" throughout the statute means "lawsuit," "cause of action," or "claim," we conclude that, in all instances where the term "action" is used within the statute, it means "lawsuit," "cause of action," or "claim" rather than "conduct." Thus, prior to the codification of article 2226b, a party could not recover for frivolous conduct by the agency.

When the Legislature codified article 2226b into chapter 105 of the Civil Practice and Remedies Code, it expressly provided that it did not intend to make any substantive changes in the law codified. Act of June 16, 1985, 69th Leg., R.S., ch. 959, § 10, 1985 Tex.Gen.Laws 3242, 3322 ("This Act is enacted pursuant to Article III, Section 43, of the Texas Constitution. This Act is intended as a recodification only, and no substantive change in the law is intended by this Act."). Since article 2226b did not permit a party to recover for the frivolous conduct of an agency, we must interpret the codification of the statute as also not permitting recovery for frivolous conduct. The trial court thus erred in holding that the frivolous acts of the Department permitted Mother to recover her costs, expenses, and attorney's fees under chapter 105. Since the trial court never found that the Department's cause of action was frivolous, unreasonable, or without foundation,[8] Mother was not enti-

---

8. The Department contends that, since the trial court found that it did not act "frivolously, unreasonably and without foundation" when the children were initially removed and in initially filing the suit, then as a matter of law, Mother cannot ever recover under chapter 105.

In response, Mother maintains that, even if the cause of action was not frivolous when filed, the action could have become frivolous as the facts became known. That question will have to be decided in another case since the trial court

tled to recover under chapter 105. Accordingly, we sustain the first point, reverse the trial court's judgment, and render judgment that Mother take nothing.

here never found that the cause of action became frivolous.