Teresa BLACK, Petitioner,

v.

DALLAS COUNTY CHILD WELFARE UNIT, Respondents.

No. D–1536.

Supreme Court of Texas.

June 17, 1992.

Rehearing Overruled Sept. 23, 1992.

Lawrence Praeger, Allen R. Morris, Dallas, for petitioner.

Sue Berkel, Dan Morales and Carey E. Smith, Austin, for respondents.

## OPINION

MAUZY, Justice.

We consider whether the recovery of attorney's fees against a state agency under Texas Civil Practice and Remedies Code chapter 105 requires a finding that the cause of action was frivolous, unreasonable or without foundation; and if so, whether such a finding was made in this case. The trial court, sitting without a jury, determined that the Texas Department of Human Services acted frivolously, unreasonably and without foundation. The court, therefore, submitted the question of reasonable attorney's fees to the jury in a subsequent trial. The court of appeals reversed and rendered judgment for the Department on the basis that section 105.002 permits the recovery of attorney's fees only when the Department files a cause of action that is frivolous, unreasonable, or without foundation and not when the Department simply acts frivolously. 812 S.W.2d 620, 623–24. We hold that the trial court made the necessary findings and properly awarded attorney's fees under section 105.002 of the Texas Civil Practices and Remedies Code.

This case involves a delicate balancing test between two competing interests: the need to protect children from abuse and the need to protect families from governmental overreaching and unnecessary interference. In order to achieve a proper balance, the legislature has enacted laws authorizing the state to pursue legal action to remove children from abusive homes, *see* Tex.Fam. Code §§ 17.01–.08, while permitting a private citizen to recover attorney's fees for an agency's prosecution of a legal cause of action that is frivolous, unreasonable or without foundation. Tex.Civ.Prac. & Rem. Code §§ 105.001–.004. That statute was not to intended to deter or chill the enforcement of child protective laws. The legislature as well as this court recognizes that the Texas Department of Human Services ("the Department") and its employees have the admirable and necessary job of protecting children from abuse. In most cases, they do an outstanding job working with limited resources. In this case, however, the record reflected that the Department went too far in its prosecution efforts. Unfortunately, in its attempt to protect the children, the Department victimized Ms. Black, the children, and the entire family unit.

A.B. is a four year-old girl with cerebral palsy who attends a school for handicapped

children. In 1988, while cleaning A.B., her teachers noticed signs of possible child abuse. The teachers contacted the Dallas County Welfare Unit of the Department, which sent a caseworker. At the time of this investigation, the caseworker was on probationary status because she had been on the job for only three months, and had not completed the basic job skill training.

After interviewing A.B., the caseworker took her to a pediatrician who was experienced in such cases. The pediatrician testified that he examined A.B. but found only a small abrasion inside of her labia which could have had many causes, including the doctor's own examination or a routine cleaning after A.B. wet her pants. The caseworker then took the child to the Department and contacted her mother, Ms. Teresa Black, and asked her to come into the office and to bring A.B.'s younger brother, B.B. The caseworker interviewed B.B. and interpreted his statements as suggesting the possibility of sexual abuse. The Department then took possession of the children pursuant to section 17.03(a) of the Texas Family Code.[1]

The next day, May 6, 1988, the Department filed a petition for emergency care and temporary managing conservatorship. The Department presented Judge Stayman, a district judge, with an ex parte order requesting temporary possession.[2] Judge Stayman denied the ex parte order because the evidence was insufficient insofar as it did not "lead her to believe that the child[ren] [were] in immediate danger."

Instead of returning the children, however, the Department obtained a hearing before a family court master on May 9, at which Ms. Black appeared *pro se*. The master recommended that the emergency orders be continued.[3] However, the master was never informed by the Department that Judge Stayman had denied the same order only one working day earlier. Based on the master's recommendation, the district court on May 9 gave temporary custody of the children to the Department.

An evidentiary hearing was not held until May 18. After presentation by the Department, the master found no evidence of abuse, and directed a verdict in favor of Ms. Black. Although the Department was told twice that its evidence was insufficient and was directed to immediately return the children to Ms. Black, the Department continued to hold the children and attempted to stay the order releasing the children to Ms. Black. The Department's failure to return the children violated section 54.015 of the Texas Government Code, which requires that a master's order remain in full effect until a state district court judge sets it aside.

On May 19, 1988, the Department, still retaining possession of the children, filed an appeal with the district court requesting a trial de novo and a stay of the master's order. The district judge refused and Ms. Black finally regained possession of her children thirteen days after Judge Stayman denied the ex parte order.[4]

1. The Texas Family Code authorizes the Department to take emergency possession of a child when:

    Upon information furnished by another that has been corroborated by personal knowledge of facts and all of which taken together would lead a person of ordinary prudence and action to believe that the child has been the victim of sexual abuse and there is no time to obtain a temporary restraining order or attachment under section 17.02 of this code. Tex.Fam.Code § 17.03(a)(6).

2. Although the legislature provided for the creation of family courts, it never mandated that a court reporter create a record of the proceedings. Therefore, we are forced to decide this case without the aid of any statement of facts from the child custody hearings.

3. In order to continue the emergency orders, Master Lewis presumed that the district judge had made a finding that the children were in immediate danger and emergency orders were necessary. Since no emergency orders existed and no additional evidence was presented, the Department continued to retain the children without any legal authority.

4. Commentators have cautioned that unnecessarily removing a child from his or her parents results in enormous harm because of the difficulty of reuniting the family and the psychological trauma to the child. *See* Note, *A Pre–Removal Hearing In Custody Decisions: Protecting the Foster Child,* 4 Cooley L.Rev. 375, 379 (1987). Unfortunately, the Black family was forced to endure this harm needlessly.

On June 6, 1988, Ms. Black filed a counterclaim alleging that "the actions taken and the filing of the lawsuit" by the Department were frivolous, unreasonable, and/or without foundation. She further demanded expenses pursuant to chapter 105 of the Texas Civil Practice and Remedies Code.[5] In a nonjury trial, the trial court found that the Department did not act frivolously when it took possession of the children on May 5 and filed the lawsuit on May 6. However, the trial court found that from Judge Stayman's refusal of the ex parte order on May 6 until the children were returned on May 19, the Department acted "frivolously, unreasonably and without foundation."

In rendering judgment for Ms. Black, the trial court made numerous findings of fact, including the following: the children were held illegally and without authority after Judge Stayman refused to sign the ex parte order on May 6, 1988; the Department never informed Master Marilea Lewis that Judge Stayman denied the ex parte order; the Department was no more prepared to put on evidence on May 9, 1988 than it was on May 6, 1988; Black's attorney was misled by the order indicating that an emergency existed; there has never been a finding that an emergency existed which necessitated the removal of the children from the home; after being told twice that the evidence was insufficient, the Department continued to hold onto the children in violation of the Master's order; and the Department ignored the district attorney's assessment that the case was too weak to win and persisted with efforts to remove the children from the home anyway.[6]

Based on its findings of fact, the trial court made the following conclusion of law: "In this particular instance, the state, by and through the Texas Department of Human Services has acted without authority, frivolously, and without foundation. Because of the aforesaid actions of the Texas Department of Human Services, Teresa Black is entitled to attorney's fees, costs, and expenses as provided for in said statute." After the trial court determined that Ms. Black was entitled to attorney's fees, it set the case for a jury trial to decide the amount of attorney's fees. The jury awarded Ms. Black expenses and attorney's fees in the amount of $53,426.15. It is undisputed that this award represents only Ms. Black's reasonable attorney's fees and expense incurred defending the Department's cause of action and prosecuting her claim from the time Judge Stayman denied the ex parte order on May 6, 1988 until the jury assessed the reasonable attorney's fees on March 28, 1990. No attorney's fees were awarded in the event of an appeal to the court of appeals or this court.

The court of appeals reversed and rendered judgment that Ms. Black take nothing based upon the trial court's conclusion of law that the Department had "[a]cted without authority, frivolously, unreasonably and without foundation." The court of appeals concluded that chapter 105 permitted attorney's fees only when the agency files a cause of action that is frivolous, unreasonable, or without foundation, and not when the agency simply acts frivolously. 812 S.W.2d 620, 623–24.

■ The court of appeals is correct that an award of attorney's fees under the stat-

---

5. Chapter 105 of the Texas Civil Practices and Remedies Code is a statutory remedy allowing citizens to recover their attorneys fees for frivolous lawsuits brought by the government or one of its agencies. The purpose of chapter 105 is to afford an aggrieved citizen some remedy from a governmental agency for the misuse of governmental power. Because chapter 105 involves distinct policy considerations, our interpretation of this statute is not applicable to cases involving sanctions under either rule 13 of the Texas Rules of Civil Procedure or section 17.50(c) of the Texas Business and Commerce Code.

6. The dissent argues that the Department did not keep the children any longer than it was allowed to by law or statute and returned them as soon as the court ordered it to do so. At 631. This argument ignores the record. The trial court found that the Department deprived Ms. Black of her children for *thirteen days illegally and without foundation* and that it retained the children *in violation of the master's order.* Unfortunately, the Department would not release the children until sometime after the court ordered it to do so.

ute requires more than a finding that particular incidents of an agency's conduct are frivolous, unreasonable, or without foundation.[7] However, this is the first reported decision which has construed Chapter 105 of the Civil Practices and Remedies Code. As a result, the trial court had no guidance as to the proper language to use in its conclusion of law to support an award of attorney's fees.[8]

■ Although the trial court worded its conclusion of law imperfectly, it appears from the record, including the judgment, evidence, and the findings of fact, that the trial court intended to conclude that the Department's cause of action became frivolous, unreasonable, or without foundation from May 6, 1988 when Judge Stayman found insufficient evidence of abuse and denied the ex parte order requesting temporary custody.[9] Without such a finding, the trial court would not have entered judgment for Black; set the case for a jury trial to award reasonable attorney's fees and expenses; and rendered judgment on the jury's verdict for $53,426.15. The Department's motion for new trial claimed that section 105 of the Texas Civil Practices and Remedies Code only authorizes recovery of attorney's fees if the state's cause of action was frivolous, not merely for frivolous actions by a state agency. With this issue explicitly called to the attention of the trial court, it nevertheless overruled the motion. This is further evidence that the trial court intended to find that the Department's cause of action, not merely its conduct, was frivolous. Accordingly, the trial court allowed Black to recover her attorney's fees and expenses pursuant to section 105 of the Texas Civil Practices and Remedies Code.

Appellate courts must give effect to the intended findings of the trial court if supported by the evidence, the record, and judgment.[10] This is based upon well-settled Texas law that in a nonjury trial every reasonable inference and intendment supported by the record will be drawn in favor of the trial court's judgment. *See Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 276 (Tex.1979); *Amos v. Sengleman*, 183 S.W.2d 1008, 1010 (Tex.Civ. App.—Galveston 1944, writ ref'd w.o.m.).

7. While the statute provides that attorney's fees may be recovered if "the court finds that the action is frivolous, unreasonable, or without foundation," it earlier provides that attorney's fees may be sought when "the agency asserts a *cause of action....*" Tex.Civ.Prac. & Rem.Code § 105.002 (emphasis added). As the court of appeals notes, chapter 105 was not intended to substantively change the law codified in the prior act. 812 S.W.2d at 624. The original statute explicitly stated that attorney's fees could be had only when "the agency's *suit* was frivolous, unreasonable, or without foundation." Act of June 16, 1981, 67th Leg., R.S., ch. 727 § 2, 1981 Tex.Gen.Laws 2675 (emphasis added). A later amendment also specifically used the language "cause of action." Act of June 1983, 68th Leg., R.S., ch. 620, §§ 2 & 4, 1983 Tex.Gen. Laws 3884, 3885–86.

8. Tracking the language of the statute would have resulted in the following conclusion of law: The court concludes that the Department's cause of action was frivolous, unreasonable, or without foundation; accordingly, Black is entitled to recover all other costs allowed by law or rule, fees, expenses, and reasonable attorney's fees incurred by Black in defending the agency's action.

9. The court specifically found that the Department did not act frivolously when it removed the children from the home on May 5, 1988; however, it did find that the Department acted frivolously when it continued to prosecute the case and retained the children after Judge Stayman denied the ex parte order.

10. Contrary to the dissent's argument, it is well-settled Texas law that appellate courts must give effect to the intended findings of the trial court and affirm the judgment if it can be upheld on any legal theory that finds support in the evidence. *See In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984) (per curiam) (citation omitted). If no findings of fact or conclusions of law are filed, the reviewing court must imply all necessary fact findings in support of the trial court's judgment. *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 276 (Tex.1979). In addition, an omitted finding, supported by the evidence, may be supplied by a presumption that it supports the judgment. *See Chevron U.S.A., Inc. v. Vortt Exploration Co.*, 787 S.W.2d 414, 417 (Tex.App.—Fort Worth 1988), *rev'd on other grounds*, 787 S.W.2d 942 (Tex.1990); Tex. R.Civ.P. 299. Furthermore, a judgment, supported by sufficient evidence and findings of fact, will be upheld even though there are errors in the conclusions of law. *See Wirth, Ltd. v. Panhandle Pipe & Steel, Inc.*, 580 S.W.2d 58, 62 (Tex.Civ.App.—Tyler 1979, no writ).

The court of appeals failed to apply the necessary presumptions and to draw reasonable inferences in favor of the judgment. For this reason, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.

HECHT, J., joined by PHILLIPS, C.J., and GONZALEZ and CORNYN, JJ., dissents.

HECHT, Justice, joined by PHILLIPS, Chief Justice, and GONZALEZ and CORNYN, Justices, dissenting.

A state agency is liable for attorney fees under TEX.CIV.PRAC. & REM.CODE § 105.002[1] only if it asserts a cause of action that the court finds to be frivolous, unreasonable or without foundation. The determinative issue is not how the agency *acted*, but how devoid of merit its *action*—its lawsuit—was. The district court did not make this distinction in this case, which was brought by the Department of Human Services for custody of two children whom it took into its possession based upon evidence that they were being sexually abused. The district court awarded $53,426.15 attorney fees against the Department of Human Services based solely upon a finding that "the State did *act* [emphasis added] frivolously, unreasonably, and without foundation" by retaining possession of the children longer than the court believed it should have. The district court never determined whether the Department's *cause of action* was frivolous, unreasonable or without foundation, and for this reason the court of appeals reversed the award of attorney fees. 812 S.W.2d 620.

This Court agrees with the appeals court that the Department's liability for attorney fees depends upon a determination that its lawsuit was frivolous, unreasonable or without foundation. In making this determination, however, the Court seems most swayed by its own feeling that the Department kept the children in this case too long.

The facts show that the Department did not keep the children any longer than it was allowed to keep them either by statute or by the district court, and that it returned them to their mother as soon as the district court ordered it to do so. But the facts regarding the Department's conduct of the lawsuit are irrelevant to a determination of whether the lawsuit was frivolous, unreasonable or without foundation. The Court concludes that it was but does not say why. The effect of the Court's decision is thus to punish the Department for erring on the side of caution in trying to protect children from sexual abuse and for retaining possession of the children even when the district court allowed it to do so. I would hold that the Department is not liable for attorney fees. I therefore dissent.

Section 17.03(a)(6) of the Texas Family Code authorizes the Department of Human Services to take possession of a child without a court order "upon information furnished by another that has been corroborated by personal knowledge of facts and all of which taken together would lead a person of ordinary prudence and caution to believe that the child has been the victim of sexual abuse and that there is no time to obtain a temporary restraining order or attachment. . . ." Acting on this authority, the Dallas County Child Welfare Unit of the Department took possession of two children—a four-year-old girl with cerebral palsy and her three-year-old brother—based upon evidence that their mother and her boyfriend had sexually abused them.

The evidence on which the Department relied is thoroughly detailed in the court of appeals' opinion, 812 S.W.2d at 621–22, and I merely summarize it here. The girl's teachers noticed while they were cleaning her that her genital area was red and swollen, and they became concerned that she might have been abused. A caseworker who had worked for the Department only

---

1. "A party to a civil suit in a court of this state brought by or against a state agency in which the agency asserts a cause of action against the party, either originally or as a counterclaim or cross claim, is entitled to recover, in addition to all other costs allowed by law or rule, fees, expenses, and reasonable attorney's fees incurred by the party in defending the agency's action if: (1) the court finds that the action is frivolous, unreasonable, or without foundation; and (2) the action is dismissed or judgment is awarded to the party."

three months interviewed the girl and her brother separately. Both children indicated, in their own words, that their mother's boyfriend had fondled their genitals, and that the mother had been present at least once when it happened. The caseworker also interviewed the mother and her boyfriend, both of whom denied molesting the children and speculated that a babysitter might be to blame. A pediatrician experienced in treating child abuse victims examined the girl and found redness and a very minor abrasion in her genital area (so minor, in fact, that he testified he might even have caused it himself during the examination). The pediatrician could not confirm sexual abuse but did not rule it out.

In accordance with TEX.FAM.CODE § 17.-03(b),[2] the Department filed this action for temporary managing conservatorship of the children on Friday, May 6, 1988, the day after it took possession of them, and appeared before the district court through counsel, an assistant district attorney, to request an emergency order granting the Department immediate temporary custody. As permitted by TEX.FAM.CODE § 17.03(c),[3] the hearing was ex parte, and the only evidence presented was the caseworker's

affidavit. That affidavit did not convince the district court that the children had been sexually abused or were in immediate danger, the statutory prerequisites for emergency ex parte relief. TEX.FAM.CODE § 17.-02(a).[4] Accordingly, the district court refused the Department's request. The court did not order the children returned to their mother, however, as it should have done under TEX.FAM.CODE § 17.03(d).[5] Rather, the court referred the case to the court master for further hearing the following Monday, May 9, and the Department kept the children over the weekend.

We have no record of the May 6 proceeding, but we do have the district judge's testimony explaining what transpired. As for why she referred the case to the master, and whether the Department should have returned the children on Friday, the judge explained:

> I don't recall independently the interaction I had with the [assistant district attorney representing the Department at the May 6 hearing], but I can say that I know what the court's practice is when the DA presents a TRO that I believe to have insufficient evidence, and that is typically to recommend the DA gather the additional evidence they believe they

2. "When a child is taken into possession under Subdivision ... (6) of Subsection (a) of this section, the person taking the child into possession shall, without unnecessary delay, cause to be filed a suit affecting the parent-child relationship and request the court to appoint a guardian ad litem for the child and to cause a hearing to be held by no later than the first working day after the child is taken into possession."

3. "The court in which the suit affecting the parent-child relationship has been filed under Subsection (b) of this section shall hold a hearing on or before the first working day after the child is taken into possession and shall make such orders as are necessary to protect the physical health and safety of the child. If the court is unavailable for a hearing on the first working day, then, and only in that event, the hearing shall be held no later than the first working day after the court becomes available, provided that the hearing is held no later than the third working day after the child is taken into possession. The hearing may be ex parte and proof may be by sworn petition or affidavit if a full adversary hearing is not practicable. If the hearing established by this subsection is not held within the time limits required, the child shall be returned to the parent, managing conservator, possessory

conservator, guardian, caretaker, or custodian who is presently entitled to possession of the child."

4. "Before any temporary restraining order or attachment of the child is issued without a full adversary hearing in a suit affecting the parent-child relationship brought by a governmental entity, the court must be satisfied from a sworn petition or affidavit that: (1) there is an immediate danger to the physical health or safety of the child or the child has been a victim of sexual abuse; and (2) there is no time, consistent with the physical health or safety of the child, for an adversary hearing."

5. "Unless the court at the hearing required under Subsection (c) of this section is satisfied that there is a continuing danger to the physical health or safety of the child if the child is returned to the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian who is presently entitled to possession of the child, the court shall order the return of the child to the person entitled to possession."

have, and set it for an emergency hearing in front of the master/referee, ... and I assume that's what I did in this case.

.    .    .    .    .

I will give [the DA] the opportunity to have a hearing in front of the master in which they can present any additional evidence that they choose to present to establish the basis for their request for a TRO.

.    .    .    .    .

As I said, I don't have any independent recollection [of the May 6 hearing]. I know that on a regular basis I will say, get this [affidavit in support of the request for emergency relief] supplemented, or return the child. So I very well may have said that to the DA.

.    .    .    .    .

Well, I sent [the case] over [to the master for a hearing on Monday, May 9]. I don't know whether [the DA is] going to be able to gain additional evidence or not. I don't want them to go present the same thing to the master.

What I say is if they have got a better case, and they want to have the master hear it, set it; if not, return that child.

On Monday, May 9, the Department appeared through counsel before the district court master, and the mother of the children appeared *pro se*. The mother requested that the hearing be postponed until she could obtain legal counsel, and the master granted her request. The mother and a representative of the Department (not the caseworker) were sworn as witnesses, and the hearing was recessed. The master then transmitted her recommendation to the district court on a preprinted form which contained the following handwritten notation under "Other Orders": "Ex parte order approved. Emergency orders continued." The "ex parte order" the master referred to appears to have been the one the district court had refused to sign. Yet the notation suggests that the master was under the misimpression that emergency orders had already issued, since she recommended that they be continued. The assist-

ant district attorney representing the Department did not advise the master that the district court had denied emergency ex parte relief the preceding Friday. How the master could have been misled, given the fact that the court had referred the case to her, or whether she was simply mistaken when she made the notation in her recommendation, is not clear.

In any event, the district judge, who could not have been mistaken about her own prior action, approved the master's recommendation and signed the emergency custody order that she had refused to sign on May 6, changing the date from the 6th to the 9th. That order was incorrect in two respects, as the district judge later testified. First, it was titled, "Ex Parte Order", although it did not issue until after both the Department and the mother had appeared before the master. Second, it recited that the court had found there to be "a continuing danger to the physical health and/or safety of the subject children ... if returned to the parent", although neither the court nor the master had made such a finding. Nevertheless, the order gave temporary custody of the children to the Department, and there is no question that the district court meant to do so. In her later testimony, the district judge stated:

It's my testimony that on May 9th I intended to enter an order that provided the Department the right to temporary custody of those children. That was not based on an ex parte hearing; it was based on a hearing held in front of Judge Lewis on May 9th wherein it was decided by the parties that the State would continue to have custody of those children until the full adversary hearing could be made.

.    .    .    .    .

Well, what I'm saying is that order that was labeled "ex parte order" was, in fact, not an ex parte order, so there was no ex parte order ever entered in this case.

If I can look at that order, this is the same order that was presented to me on May 5th, 1988, that was not entered, and it was presented after the hearing on

May 9th. And I intended to give the Department of Human Services the right to temporary custody and possession of the two children subject of the suit.

The finding that was made in Paragraph 1 that says, "The Court finds there is a continuing danger to physical safety of the subject children named below if returned to the parent, conservator, custodian or guardian presently entitled to possession," that finding was never made, and that was not explained to the Department of Human Services. It was explained to their counsel.

As allowed by the May 9 order, the Department retained possession of the children. On May 18, after a second postponement at the mother's request, the master heard the merits of the case and issued her recommendation that the Department's request for temporary custody be denied, and that the children be returned to their mother. The next day the Department noticed its appeal of the master's recommendation to the district court and moved to stay its effect until the appeal could be heard. That same day the district court denied the Department's motion and ordered that the children be returned "instanter". The Department complied, and returned the children that day.

We have held that whether an action is "groundless and brought in bad faith, or brought for the purpose of harassment", TEX.BUS. & COM.CODE § 17.50(c), is a question of law. *Donwerth v. Preston II Chrysler–Dodge, Inc.*, 775 S.W.2d 634, 637 & n. 3 (Tex.1989). Likewise, whether an action is frivolous, unreasonable or without foundation is also a question of law which an appellate court can determine without findings by the trial court. Thus, the court of appeals in this case erred in setting aside the award of attorney fees simply because the trial court's findings concerning the Department's conduct were not the findings required by section 105.002. The court of appeals should have made its own determination whether the Department's action was frivolous, unreasonable or without foundation. This Court also errs, in my view, in arguing that if the district court's *actual* findings are insufficient,

then we should give effect to its *intended* findings. I am not aware of any authority an appellate court has to disregard a trial court's actual findings and give effect instead to findings the appellate court believes must have been intended. This strange, new concept is unnecessary to the decision in this case. The relevant facts are not in dispute. The Department's evidence was what it was. Whether the Department's lawsuit was frivolous, unreasonable, or without foundation is a question of law for the Court to decide irrespective of the district court's findings.

There is no gainsaying that the Department had a weak case to take possession of these children. After all, it lost on the merits. But was the action frivolous, or unreasonable, or without foundation? Simply taking the ordinary meaning of these words, I think it clearly was not. When a little girl says she has been molested, and her genitals are red and swollen, and her teachers are concerned, and an experienced pediatrician cannot rule out sexual abuse, even if the pediatrician cannot confirm abuse and the investigating caseworker is inexperienced, a lawsuit filed by the Department to protect the child from harm that is potentially very serious and altogether too common in this day and time is not frivolous, or unreasonable, or without foundation.

The Department's suit had enough merit for it to obtain an order giving it temporary custody of the children. The Department's suit did not suddenly become frivolous when it ultimately did not prevail. Were this the rule, the Department would be liable for attorney fees whenever it lost a lawsuit. I suppose the same rule would apply in other contexts, such as under the Deceptive Trade Practices Act, TEX.BUS. & COM.CODE § 17.50(c), and for the imposition of sanctions under TEX.R.CIV.P. 13. This is not a workable rule. The Department's suit had no more or less merit to it on May 18, when the master recommended that relief be denied, than it did on May 9 when the district court signed an emergency order. The case was not open and shut, and the Department lost. That fact alone

should not subject it to liability for attorney fees.

The Court does not explain why it reaches a contrary conclusion, other than to say that "the Department's cause of action became frivolous, unreasonable, or without foundation from May 6, 1988 when Judge Stayman found insufficient evidence of abuse and denied the ex parte order requesting temporary custody." *Ante,* at 630. Yet Judge Stayman signed the very same order three days later giving the Department temporary custody of the children. If the denial of the relief the Department requested established that its action was frivolous, unreasonable and without foundation, the converse of this proposition—that the granting of relief established that the action was meritorious—would certainly seem to be true as well. I do not agree, however, that the district court's denial of ex parte emergency relief proves that the Department's action was so meritless that it should be liable for attorney fees. If that is to be the rule, the Court has greatly increased state agencies' liability for attorney fees.

What appears to be most persuasive to the Court is not that the Department was denied relief on May 6, but that it retained the children after that date. I need not attempt to defend the Department's conduct. Again, the issue is not how the Department acted, but whether it had a non-frivolous cause of action. The Court states that the Department should have returned the children to their mother on May 6, after the district court refused to give it emergency custody. Perhaps it should, but it was not legally required to do so. The governing statute, TEX.FAM.CODE § 17.-03(d), requires *the court to order* return of the children if it fails to conclude that they are in immediate peril. The district court intentionally did not issue such an order so that the Department could present its evidence to the master. Following that hearing, the district court signed an order giving the Department temporary custody of the children. Assuming that the Department had no more evidence on May 9 than it presented on May 6, even though one new witness was ready to testify in its

behalf, and assuming further that it misled the master by failing to disclose the court's refusal to grant emergency relief, even though it was the court that referred the case to the master for hearing, the district judge, testifying after the events, clearly stated that *she* was not mistaken: she intended to give the Department custody of the children. If the Department's conduct were in issue, and it is not, I do not see how it can be faulted for doing what the district court intended it to do. The Department returned the children to their mother as soon as the district court ordered it to do so.

\* \* \* \* \* \*

For the reasons I have expressed, I would hold that the Department's action was not frivolous, unreasonable or without foundation, and would therefore affirm the judgment of the court of appeals in favor of the Department.