**REVERSE and REMAND in part; AFFIRM in part; and Opinion Filed August 23, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-01335-CV

**WESLEY ROEMER, Appellant**
**V.**
**EDD HASKINS, Appellee**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. Dc-13-02661**

## MEMORANDUM OPINION
Before Justices Bridges, Brown, and Nowell
Opinion by Justice Bridges

Wesley Roemer appeals the trial court's judgment incorporating two prior summary judgments. In a single issue, Roemer argues the trial court erred in (1) denying him summary judgment on his declaratory judgment claims and breach of fiduciary duty claims against Edd Haskins and (2) granting Haskins a take-nothing summary judgment on Roemer's breach of contract and breach of fiduciary duty claims and declaratory relief regarding the underlying contract. Roemer appeals the trial court's final judgment "only insofar as it incorporates those prior summary judgment orders against Roemer and for Haskins." In his cross-appeal, Haskins argues the trial court erred in awarding Roemer management fees associated with a certain project and the judgment should be modified to eliminate a percentage of the attorney's fees awarded to

Roemer.  We affirm the trial court's judgment in part, reverse in part, and remand for further proceedings.

In July 2008, Roemer and Haskins, through the entity Haskins/Roemer L.L.C., began operating a real estate business developing sites for the construction of self-storage facilities.  In April 2009, Haskins formed a limited liability company called Chapel Colorado, L.L.C. for the development of a self-storage project in Colorado Springs, Colorado.  Although Haskins was listed as the sole member of Chapel Colorado, he shared in the equity and distributions with Roemer.  In 2011, Haskins/Roemer entered into an agreement with Endeavor Real Estate Group (an "Endeavor deal") for a project known as Brodie MS, L.P.  Haskins/Roemer was to act as the development member for Brodie and was to be paid a developer's fee, builder's fee, and management fee.

A dispute arose between Roemer and Haskins regarding their respective rights and obligations related to Haskins/Roemer and other development projects.  In December 2011, Roemer and Haskins entered into a settlement agreement to resolve their disagreement related to their respective roles in Haskins/Roemer.  As Haskins stated in deposition testimony, "we both felt like that the association between the two of us was more beneficial than each of us individually going our own way."  In pertinent part for purposes of this appeal, the settlement agreement provided as follows:

> Independent Deals.  With the exception of Pflugerville, Brodie, Chapel Colorado and any current or future Endeavor deals, Haskins/Roemer, LLC shall not pursue any future deals.  Roemer and Haskins are free to pursue deals either independently or with other entities.  Notwithstanding the existence of Haskins/Roemer, LLC, the Haskins/Roemer, LLC Operating Agreement, or this Settlement Agreement, either Haskins or Roemer may engage in whatever activities they choose, whether the same may be competitive with Haskins/Roemer, LLC or otherwise without having or incurring any obligation to offer any interest in such activities to Haskins/Roemer, LLC or any other member.  Nothing in this Settlement Agreement or the Haskins/Roemer Operating Agreement shall prevent the members from engaging in such activities, or require any member to permit Haskins/Roemer, LLC or any other member to participate in any such activities, and as a material part of each Parties' consideration under this Settlement Agreement, each Party hereby waives any such right or claim of participation.

Notwithstanding the foregoing, the Parties agree to give Endeavor the right of first refusal on all self-storage deals in either the Austin or DFW SMSA. This requirement will expire on August 31, 2014 or one year after the issuance of a CO for any Endeavor- Haskins/Roemer, LLC self-storage project commenced before August 31, 2014, whichever comes later. Each party must be copied on all correspondence, offer or presentation of any deal made to Endeavor. If Endeavor declines to pursue such deal, within fourteen (14) days after same is presented to Endeavor either party shall be free to take any such deal to third-parties with no obligation to Haskins/Roemer, LLC or the other Party. If, however, Endeavor has indicated an interest in pursuing the deal, the Parties agree that they will not take the deal to any third-party so long as Endeavor continues to actively pursue such deal.

In March 2013, Roemer filed his original petition against Haskins alleging, among other things, that Haskins engaged in a concerted effort to exclude Roemer from any existing or future development projects with Endeavor shortly after execution of the settlement agreement. Roemer alleged the known Endeavor deals at the time of the settlement agreement were Brodie and Southpark Meadows. Roemer alleged this was the second time Haskins had attempted to exclude Roemer from joint projects by forming new LLCs and stating Roemer was no longer a participant in the new entity. Specifically, Roemer alleged (1) Haskins informed Endeavor "he worked out other arrangements with Roemer and that Roemer was not participating in the Southpark Meadows project"; (2) Haskins and Endeavor thereafter continued to direct Roemer to make adjustments to the Southpark Meadows projections and two other projects; and (3) when Roemer requested status updates from Haskins regarding Southpark fees, Haskins told Roemer "there were delays and Roemer was not told that he had been unilaterally excluded from the project." Among other things, Roemer asserted against Haskins claims of breach of the settlement agreement and fraud in inducing Roemer to enter into the settlement agreement. Roemer also sought a finding that the terms of the settlement were ambiguous and a declaratory judgment construing the terms of the settlement agreement.

In January 2015, Roemer filed a traditional motion for summary judgment seeking a declaration that the "Independent Deals" provision of the settlement agreement (1) left Roemer

and Haskins free to pursue any deals without any obligation to each other or Haskins/Roemer except for the Pflugerville, Brodie, and Chapel Colorado deals and any current or future deals with Endeavor and (2) Haskins Roemer must present any deals in Austin or Dallas/Fort-Worth to Endeavor subject to the stated deadline, at which point Endeavor has a right of first refusal. The motion also sought to impose liability on Haskins for usurping a corporate opportunity by individually pursuing the Southpark Meadows project. The trial court denied Roemer's motion for summary judgment.

Haskins filed competing motions for summary judgment seeking a declaration (1) that the settlement agreement allowed Haskins to engage in "any activity" he chooses, regardless of whether such activity competes with Haskins/Roemer and (2) by permitting Haskins to engage in "any activity," the settlement agreement eliminated any duty not to usurp any corporate opportunity. In making this argument, Haskins relied on the Independent Deals provision of the settlement agreement, especially the following language:

> Notwithstanding the existence of Haskins/Roemer, LLC, the Haskins/Roemer, LLC Operating Agreement, or this Settlement Agreement, either Haskins or Roemer may engage in whatever activities they choose, whether the same may be competitive with Haskins/Roemer, LLC or otherwise without having or incurring any obligation to offer any interest in such activities to Haskins/Roemer, LLC or any other member.

The trial court granted Haskins' motions for summary judgment but reserved for trial Roemer's claims for breach of contract for Haskins' (1) failure to pay Roemer the Brodie management fee and (2) failure to distribute proceeds from the Chapel Colorado sale. Following a bench trial, the trial court entered a final judgment awarding Roemer $81,248.31 in fees associated with the Chapel Colorado deal and $36,000 in fees associated with the Brodie deal. This appeal followed.

In a single issue, Roemer argues the trial court erred in (1) denying him summary judgment on his declaratory judgment claims and breach of fiduciary duty claims against Edd Haskins and (2) granting Haskins a take-nothing summary judgment on Roemer's breach of contract and breach

–4–

of fiduciary duty claims and declaratory relief regarding the underlying contract. In his brief, Haskins argues the settlement agreement unambiguously permits either Roemer or Haskins to pursue deals with Endeavor independently of Haskins/Roemer and each other and does not require them to pursue those deals through Haskins/Roemer. In effect, both Roemer and Haskins are raising on appeal the issues raised in their competing motions for summary judgment.

Whether a contract is ambiguous is a question of law for the court to decide. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *Arredondo v. City of Dallas*, 79 S.W.3d 657, 666 (Tex. App.—Dallas 2002, pet. denied). If a contract can be given a definite or certain legal meaning or interpretation, then it is not ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Arredondo*, 79 S.W.3d at 666. If, however, the contract is reasonably susceptible to more than one meaning, it is ambiguous. *Coker*, 650 S.W.2d at 393; *Arredondo*, 79 S.W.3d at 666. A contract ambiguity may be either patent or latent. *Arredondo*, 79 S.W.3d at 666. A patent ambiguity is one evident on the face of the contract, while a latent ambiguity exists when a contract is unambiguous on its face, but fails because of some collateral matter that creates an ambiguity. *Nat'l Union Fire Ins. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *Arredondo*, 79 S.W.3d at 666. Patent ambiguity of a contract may be considered for the first time on appeal from a motion for summary judgment. *Arredondo*, 79 S.W.3d at 666. If a contract is ambiguous, the ambiguity raises a fact question to be determined by a jury. *Id.*

Here, Roemer argues the settlement agreement required Haskins to pursue future deals with Endeavor through the LLC, Haskins/Roemer, and Haskins breached his fiduciary duties under the settlement agreement by usurping the Southpark project for himself alone. In making this argument, Roemer relies on the language in the settlement agreement that, "[w]ith the exception of Pflugerville, Brodie, Chapel Colorado and any current or future Endeavor deals, Haskins/Roemer, LLC shall not pursue any future deals." Roemer argues this language makes

clear that Haskins/Roemer would continue for certain projects, including "any current or future Endeavor deals."

In contrast, Haskins argues the settlement agreement permitted Roemer and Haskins to pursue Endeavor deals independently of Haskins/Roemer and each other. Haskins argues the first paragraph of the Independent Deals paragraph "merely defines and limits the LLC's business (if any) going forward." Haskins emphasizes the next three sentences in the paragraph which provide "Roemer and Haskins are free to pursue deals either independently or with other entities," Roemer and Haskins may "engage in whatever activities they choose" notwithstanding the settlement agreement, and "nothing" in the settlement agreement prevents Roemer or Haskins from engaging in activities competitive with Haskins/Roemer or requires them to conduct those activities exclusively through the LLC.

We conclude the settlement agreement is reasonably susceptible to more than one meaning. The summary judgment evidence is not conclusive as to which interpretation the parties intended. The settlement agreement is, therefore, patently ambiguous and the trial court erred in granting summary judgment. *See Arredondo*, 79 S.W.3d at 669. We sustain Roemer's issue.

In Haskins' cross-appeal, he argues the trial court erred in awarding Roemer $36,000 in management fees relating to the Brodie project when Roemer admitted he did not perform or even try to perform any of the manager duties required by the settlement agreement. Haskins argues further that, because Roemer is not entitled to any damages on his breach of contract claim relating to the Brodie fees, he cannot recover any attorney's fees on that claim.

Where, as here, a record contains no findings of fact and conclusions of law, all necessary findings of fact to support the court's judgment are implied. *Burns v. Burns*, 116 S.W.3d 916, 920 (Tex. App.—Dallas 2003, no pet.). In a nonjury trial "every reasonable inference and intendment

supported by the record will be drawn in favor of the trial court's judgment." *Black v. Dallas Cnty. Child Welfare Unit*, 835 S.W.2d 626, 630 (Tex.1992).

The trial court denied summary judgment on the issue of Haskins' failure to pay Roemer the Brodie management fee and reserved the matter for trial. At trial, Roemer testified there was an oral agreement between him and Haskins that Roemer would manage "100 percent of Pflugerville" and Haskins would manage "100 percent of Brodie," and they would "split the management fee for those two entities, Brodie and Pflugerville 50-50." Roemer confirmed he submitted an affidavit in which he stated he "performed the requisite amount of manager and [sic] duties that Haskins/Roemer was obligated to perform on Brodie pursuant to the terms of the Settlement Agreement." Roemer also confirmed he did not perform any management duty on Brodie because "the duties were split for me to do Pflugerville and not Brodie."

Haskins read aloud from his deposition that Haskins "would go over to Brodie while" Brodie was "merchandised and the system set up" "if [Roemer] would come pick up the slack at Pflugerville until [Haskins] could get Brodie up and running." Haskins testified this "made it possible for" Roemer to come to Austin and get "signature cards and review[] the invoices and [pay] the bills." On cross-examination, Haskins was asked whether there was any dispute "regarding whether Mr. Roemer performed his required duties, management duties with Brodie." Haskins answered, "Absolutely none," and clarified that Roemer "openly admits that he's performing all management duties at Brodie. It's indisputable." On this record, drawing every reasonable inference and intendment in favor of the trial court's judgment, we conclude the trial court could have concluded Roemer was entitled to recover management fees in connection with Brodie. *See Black*, 835 S.W.2d at 630. Because Roemer was entitled to damages on his claim related to the Brodie fees, Haskins' challenge to the award of attorney's fees incurred in asserting that claim lacks merit. We overrule Haskins' issues raised in his cross-appeal.

We affirm that portion of the trial court's judgment awarding $117,248.31, plus interest, and attorney's fees to Roemer; we reverse the trial court's orders on motions for summary judgment entered on November 23, 2015 and February 16, 2016, and we remand for further proceedings consistent with this opinion.


/David L. Bridges/
DAVID L. BRIDGES
JUSTICE


171335F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WESLEY ROEMER, Appellant

No. 05-17-01335-CV V.

EDD HASKINS, Appellee

On Appeal from the 191st Judicial District Court, Dallas County, Texas
Trial Court Cause No. Dc-13-02661.
Opinion delivered by Justice Bridges.
Justices Brown and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** the trial court's orders on motions for summary judgment entered November 23, 2015 and February 16, 2016, as incorporated into the trial court's final judgment. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered August 23, 2019.